# Exhibit 1

REDACTED

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

SONATYPE, INC.
8161 Maple Lawn Blvd. #250
Fulton, MD 20759
Howard County

Plaintiff,

v.

JASON VAN ZYL and TAKARI, INC.
50 King Street
Guelph, ON, Canada N1E4P6

Defendants.

Case No.:_____

**REDACTED VERSION**

DEMAND FOR JURY TRIAL

**COMPLAINT AND JURY DEMAND**

Plaintiff Sonatype, Inc. ("Sonatype"), by its undersigned counsel, brings this Complaint

for Injunctive and Monetary Relief against Defendant Jason van Zyl (or "van Zyl") and Takari,

Inc. ("Takari") (collectively "Defendants"), and as grounds therefore state as follows:

1.     This civil action involves the efforts of a former founder to undermine and harm

the company he helped build by misappropriating, copying, and wrongfully disclosing the

company's valuable intellectual property and trade secrets. Defendant van Zyl founded Sonatype

in 2008, but after numerous disagreements with management, he left Sonatype in 2013 and

formed a new venture called Takari.

2.     Over the course of the last year, Defendants have poached key Sonatype

employees and engineers, each of whom has intimate familiarity with Sonatype's proprietary and

confidential business information, including its proprietary know-how and highly-confidential

source code. Sonatype now brings this action against Defendants for two reasons. First,

Defendants intentionally misappropriated and continue to use Sonatype's confidential business

information, including wrongfully publishing Sonatype's confidential source code for public consumption as well as using it in Takari's competing products. Second, Defendants intentionally removed Sonatype's copyright notices that were affixed thereto without authorization.

## NATURE OF THE ACTION

3.      Sonatype's action arises under the Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq*.), the Maryland Uniform Trade Secrets Act (Md. Code Ann., Com. Law §§ 11–1201, *et seq*.), and the Digital Millennium Copyright Act (17 U.S.C. § 1202). Sonatype seeks damages from Defendants to compensate for injuries sustained from Defendants' unlawful actions.

## THE PARTIES

4.      Sonatype is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 8161 Maple Lawn Blvd. #250, Fulton, Maryland 20759.

5.      On information and belief, Defendant van Zyl is a citizen of Canada who resides at 50 King Street, Guelph, Ontario, Canada N1E4P6.

6.      On information and belief, Defendant Takari was previously registered as a Delaware corporation, but has since expired by its own limitation or otherwise dissolved. On information and belief, Takari is an unincorporated association with a place of business at 50 King Street, Guelph, Ontario, Canada N1E4P6. On information and belief, Takari is not incorporated or headquartered in the State of Maryland, and none of its members are domiciled in or are residents of Maryland. On information and belief, at least Defendant van Zyl continues to transact business as Takari by, for example, distributing software under Takari's name, maintaining Takari's website (takari.io), operating Takari's Twitter page (@takari_io), and using a Takari email address (jason@takari.io).

7.     On information and belief, at all times relevant to this Complaint, Defendants intentionally engaged in and/or directed or induced its agents to engage in tortious conduct against Sonatype, thereby purposefully causing foreseeable injury to Sonatype in the District of Maryland.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because certain claims arise under 18 U.S.C. § 1836 *et seq*., 17 U.S.C. § 101 *et seq*, and 17 U.S.C. § 1202.

9.     This Court has supplemental jurisdiction over Sonatype's claims arising under the laws of Maryland, pursuant to 28 U.S.C. § 1367(a), because these state law claims are so related to Sonatype's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10.     This Court has personal jurisdiction over Defendants because the exercise of personal jurisdiction is permitted under the Maryland Long Arm Statute, *see* Md. Code Ann., Courts & Jud. Pro. § 6-103, including at least § 6-103(b)(1)-(4), and because the exercise of personal jurisdiction comports with due process.

11.     On information and belief, Defendants have directly, or through agents acting on their behalf, engaged in a persistent course of conduct directed at the State of Maryland. On information and belief, as the founder, former board member, and former Chief Technology Officer of Sonatype, Defendant van Zyl at all relevant times had knowledge that Sonatype was (and is) a corporation operating its principal place of business in Fulton, Maryland. On information and belief, with that knowledge, Defendants directed their agents—former independent contractors for Sonatype—to wrongfully acquire or retain Sonatype's proprietary and confidential business information. On information and belief, Defendants' agents did

- 3 -

wrongfully acquire or retain Sonatype's proprietary and confidential information, including its know-how and source code, with knowledge that Sonatype's confidential information would be used to design, or would be incorporated into, a product that would directly compete with Sonatype's products. Md. Code Ann., Courts & Jud. Pro. § 6-103(b)(3).



12. On information and belief, Defendants intentionally distributed Sonatype's proprietary and confidential information, including its software source code, in order to redirect Sonatype customers, including Maryland customers, away from a Maryland business and toward Defendants' out-of-state business. On information and belief, Defendants knew that their tortious activities, including the improper taking, copying, misappropriation, distribution, and publishing of Sonatype's confidential and proprietary business information, would injure Sonatype at its principal place of business in Fulton, Maryland. Md. Code Ann., Courts & Jud. Pro. § 6-103(b)(3).

13. Additionally, on information and belief, Defendants have directly, or through agents acting on their behalf, intentionally directed electronic activity into the State of Maryland by providing goods and services to customers in Maryland, On information and belief, the software and software-related

services provided by Defendants wrongfully include and/or are derived from, Sonatype's proprietary and confidential business information. As such, this cause of action arises or relates to Defendants' contacts with customers in the State of Maryland. Md. Code Ann., Courts & Jud. Pro. §§ 6-103(b)(1)-(2); 6-103(c).

14.     On information and belief, Defendant van Zyl is the founder and owner of Takari. On information and belief, Takari is the alter ego of Defendant van Zyl, and therefore Defendant van Zyl's knowledge that unlawful actions taken against or directed at Sonatype would cause harm to Sonatype in the State of Maryland is imputed to Takari.

15.     In the alternative, Sonatype's DCMA claim and one of its trade secret misappropriation claims arise under federal law. Therefore, if Defendants are not subject to jurisdiction in any state's courts of general jurisdiction, they are subject to this court's personal jurisdiction at least under Federal Rule of Civil Procedure 4(k)(2). In accordance with Rule 4(k)(2), and exercising jurisdiction over Defendants is consistent with the United States Constitution and laws, where Defendants have had continuous and extensive contact with, and directed their tortious conduct towards, Sonatype, a Maryland-headquartered company.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

17.     On information and belief, Defendants' wrongful conduct, including their trade secret misappropriation, was aimed at Sonatype who suffered foreseeable pecuniary injury in this District as a result of Defendants' conduct.

18.     On information and belief, Defendants have a sufficient connection with the District of Maryland to make venue proper in this District. For example, Defendant van Zyl has regularly communicated and interacted with Sonatype and its products in Maryland. On

information and belief, Defendant van Zyl's communications and interactions with Sonatype

after his termination were in furtherance of his business activities at Takari.

19.     Finally, to the extent there is no district where an action may otherwise be

brought, Defendants are subject to personal jurisdiction in this District for the reasons described

above, and accordingly, venue is proper in this District.

## FACTUAL BACKGROUND

### A.  Background of Sonatype's Software Development Tools

20.     Sonatype is a Maryland-based company that was founded in 2008.

21.     Sonatype provides tools that apply the fundamentals of supply chain automation

to end-users' software development lifecycles. Sonatype's tools assist software development

organizations intelligently source, manage, assemble, and maintain software components, thus

improving the quality, security, and speed of the developers' software supply chains. Sonatype

provides its tools to thousands of organizations and developers around the world, and the

commercial side of its business generates significant annual revenue and goodwill.

22.     Sonatype grew out of a software project co-founded by Defendant van Zyl, which

resulted in the creation of a software build automation tool known as "Apache Maven" (or

"Maven"). Maven is a tool primarily used to manage builds of Java-based software applications.

Maven is capable of automatically compiling, testing, packaging, and deploying software

applications with little need for user intervention.

23.     Maven supports the automatic downloading and use of "software libraries" from a

central repository. A "software library" is a pre-built software binary package that can be reused

across different software applications. The benefit of using libraries is that a developer can

implement the same functionality over-and-over again when creating applications by relying on a

common library to perform that functionality. Third-parties may develop libraries and distribute

them publicly such that anyone can use them, or in-house developers may create libraries internally such that the libraries are only available to the developing organization. Developers typically utilize a combination of both internal and external libraries when developing software applications.

24.     The Maven tool uses a default central repository known as "Maven Central." Sonatype hosts and maintains the Maven Central repository. The Maven Central repository hosts over one million publicly-available, open-source software libraries for use by anyone building applications using the Maven tool. The Maven tool can automatically download any of the libraries hosted on Maven Central for use in a software application and anyone can publish software libraries onto the Maven Central repository.

25.     In addition to hosting and maintaining the Maven Central repository, Sonatype offers other software development management tools. Sonatype's most popular software tool is known as the "Nexus Repository" (or "Nexus"). In general terms, Nexus duplicates the functionality of Maven Central. It is a software "component" repository that third-party organizations can host internally. It allows localized versions of the Maven tool to access software libraries hosted within Nexus instead of accessing them through Maven Central. This allows organizations to host internal libraries in a private Nexus repository without providing these libraries to the public on Maven Central. Nexus can also act as a proxy or cache of software libraries. The Nexus server can store frequently accessed public libraries so that an organization can quickly utilize those libraries. This eliminates the need for an organization to re-download frequently accessed libraries from Maven Central each time they are used.

26.     The Nexus repository can store more than just "Maven" software libraries. In particular, a popular feature introduced in version 3.0 of Nexus is the integration of Nexus with a

software tool known as "Docker." Docker is an open-source product that automates the deployment of software applications inside what are known as "containers." A Docker container is a self-contained environment for running software applications. A computer that supports Docker is able to run multiple Docker containers simultaneously, allowing for greater computer resource efficiency. In general, Docker containers are equipped with the necessary software dependencies and configurations to allow for a particular software application to run. For example, if a software application is a web-based application, the Docker container may include a web server application, a database application, and the required configuration for the web server and database to work with the web application.

27.    Like with the Maven tool, there is a centralized Docker repository, known as "Docker Hub," where the public can access pre-built Docker containers. Also like Maven, any member of the public can publish Docker containers to Docker Hub. The Nexus Repository can perform functions with Docker Hub that are similar to those it performs with Maven. For example, Nexus can store private Docker containers for internal use, as well as act as a proxy/cache for more frequently accessed Docker containers.

28.    Sonatype distributes different Nexus Repository programs: (1) Nexus Repository Open Source; (2) Nexus Repository OSS; and (3) Nexus Repository Pro. Nexus Repository Open Source is available in open-source form on the web-based repository hosting service known as "GitHub." Nexus Repository OSS is free and relies on a base of the Nexus Repository Open Source, but also includes some closed source plugins. Nexus Repository Pro is Sonatype's commercial product and relies on Nexus Repository OSS, but also includes some paid functionality including some plugins. In this context, a plugin is a piece of software that can extend the functionality of an existing software application. For example, a plugin can allow an

application to integrate with new services or data formats that didn't exist when the application was first developed.

29.     The Docker functionality is only available in Sonatype's Nexus Repository 3.0 as a closed-source plugin. Sonatype chose to release the Docker plugin closed-source for two reasons. First, because of Docker's popularity, including Docker support within Nexus Repository is important to many Sonatype customers. Second, because the Docker functionality is only available in Nexus Repository 3.0, customers are incentivized to migrate to Nexus Repository 3.0. This migration provides a competitive advantage to Sonatype because, by incentivizing Sonatype's customers to move to Nexus Repository 3.0, Sonatype can avoid supporting legacy products and systems, such as Nexus Repository 2.0.

30.     All three of Sonatype's Nexus Repository programs are Java software applications. In other words, Sonatype's software developers write Nexus as Java source code. In general, source code is a set of instructions written in human-readable form that, when executed by a computer, performs actions specified by the instructions. Sonatype's source code contains copyright management information, which identifies, for example, the name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

31.     Source code must first be converted into a format the computer can understand before it can be executed. In Java, this executable form is called "bytecode." In other languages, this might be referred to as "object code" or "machine code." The process of converting source code into instructions that a computer can understand is generally called "compilation." This compilation process can be complicated and time consuming—at times it may take several hours

or even days to complete. Once Sonatype converts the Java code into bytecode, a computer can then execute the bytecode.

32.     Sonatype releases the OSS and Pro version of its Nexus Repository software in bytecode format so that a computer can execute it without having to compile the source code first. Sonatype does not release its underlying confidential source code when it releases the OSS and Pro version of its Nexus Repository.

33.     Releasing software "open source," means that the source code underlying the software is made freely available to the interested public (usually subject to terms and conditions of certain licenses) who desire to modify, build upon, or use the open source software.

34.     In contrast, "closed source" software (often referred to as "binary" or "machine" format) is code that is released only after the source code has already been compiled. For example, as discussed above, Sonatype released its Pro version of its Nexus Repository closed source, so that its confidential source code is not readily available to or easily ascertainable by end-users.

35.     By maintaining certain source code as "closed source," Sonatype also maintains an advantage over potential competitors because they are unable to easily replicate the functionality of Sonatype's software without making their own significant investments into source code development.

**B.      Sonatype Takes Extensive Measures to Secure Its Confidential Business Information**

36.     Sonatype has and continues to employ a variety of means and policies to protect the integrity of its proprietary and confidential business information, including its know-how and source code.

37.     Sonatype's Employee Handbook, which all employees are required to review and acknowledge receipt of, outlines a number of policies directed at ensuring the protection of Sonatype's proprietary and confidential business information.

38.     Sonatype's policies require all employees to adhere to high ethical standards and to comply with all applicable legal requirements when engaging in business conduct on behalf of Sonatype. Also, employees are required to maintain the confidentiality of Sonatype information and are restricted from using any Sonatype information for personal advantage. The Sonatype Employee Handbook specifically recognizes Sonatype's confidential information, including its source code, as "one of Sonatype's most valuable assets." The Handbook provides, in part, that employees may not disclose Sonatype's confidential information, either directly or indirectly, with or in the presence of persons outside of Sonatype, either during employment, or at any time thereafter, except as expressly required by Sonatype management.

39.     Sonatype's policies prohibit employees from downloading or otherwise importing programs, files, or documents into Sonatype's computer equipment. Sonatype's also prohibits employees from use of portable drives to download Sonatype information for any purpose other than Sonatype business without the advance written approval by Sonatype's General Counsel. Sonatype's policies further prohibit employees from transmitting, retrieving, or storing Sonatype information of any kind on their personal email systems without prior authorization.

40.     Access to Sonatype's electronic systems is strictly controlled through the use of passwords and access authorizations. In particular, Sonatype requires that each worker accessing multi-user information systems have a unique user ID and a private password. The user IDs must be employed to restrict system privileges based on job duties, project responsibilities, and other activities.

41.     Upon termination of employment from Sonatype, departing employees are required to return all Sonatype property in their possession, including but not limited to PCs, software, printers, security cards, telephones, mobile phones, smart phones, tablets, credit cards, keys, and any other work product created during the course of employment.

## C.  The Origins of the Nexus Repository Project and the Genesis of Sonatype's Current Business

42.     Defendant van Zyl co-founded the Apache Maven project that resulted in the creation of the software build tool known as Maven as discussed above. Subsequent to the Apache Maven project, in 2008, Defendant van Zyl founded Sonatype and ultimately assumed the role of Chief Technology Officer.

43.     Later in 2008, Sonatype hired two software development contractors based in Europe, Alin Dreghiciu and Tamas Cservanak, to assist Sonatype in developing source code for the Nexus Repository project.

44.     As a condition of their engagement as independent contractors for Sonatype, Dreghiciu and Cservanak (through his consulting company Flat White Ltd.) each agreed to the terms of an "Independent Contractor Agreement," which included clauses governing the use and disclosure of Sonatype's confidential business information and trade secrets. True and correct copies of the Independent Contractor Agreements agreed to by Dreghiciu and Cservanak are attached as Confidential Exhibits A and B, respectively, and are hereby incorporated herein. The agreements provide, in part, that independent contractors are prohibited from using or disclosing Sonatype's confidential information except as necessary to perform their obligations under the agreements with Sonatype. *See* Ex. A at 3-4; Ex. B at 3-4.

45.     The respective Independent Contractor Agreements indicate that the prohibition on the unauthorized use and disclosure of Sonatype's confidential information, "shall survive any termination or expiration" of their agreements.

46.     Dreghiciu and Cservanak had regular access to, and indeed took part in creating, Sonatype's confidential business information, including its source code and related know-how that enabled the functionality of the Nexus Repository.

47.     On information and belief, Dreghiciu and Cservanak had copies of Sonatype's source code in their possession during the course of their engagement by Sonatype.

48.     In February 2012, Sonatype released its Nexus Repository 2.0 product. Sonatype's Nexus product proved to be a great success, reaching over 100,000 installations worldwide by 2016.

49.     In March 2013, a third party released Docker to the public. Over the next three years, Docker became popular among software developers. Software developers using Sonatype's Nexus product requested that Docker support be built into Nexus. To meet this demand, Sonatype invested substantial time and resources into developing confidential and proprietary source code to enable its Docker plugin feature.

50.     Sonatype's success and strong competitive position in the software development tools market is the product of many years of its development of proprietary information and protected trade secrets. For example, although Docker support is free for all Nexus users, the Docker plug-in is released ***closed source***. As a consequence, licensees of Nexus do not have access to Sonatype's confidential source code for the Docker plugin.

**D.  Van Zyl's Formation of Takari and Poaching of Key Sonatype Personnel**

51.     During his tenure at Sonatype, Defendant van Zyl had several disputes with other Sonatype executives and product managers regarding the future and direction of the company.

On information and belief, Defendant van Zyl and Sonatype's management had irreconcilable differences on these issues, and Defendant van Zyl resigned from Sonatype in August 2013. He officially left Sonatype in November 2013.

52.     Subsequently, on information and belief, Defendant van Zyl's already-strained relationship with Sonatype became more adversarial in nature. On information and belief, at some time subsequent to his departure from Sonatype, Defendant van Zyl went so far as to declare to Sonatype employees that he wanted to "destroy Sonatype."

53.     On information and belief, in August of 2013, Defendant van Zyl formed a new company called Takari, Inc. which initially focused on providing training for the Maven tool.

54.     On information and belief, throughout 2014 and 2015, Takari released a number of software tools. On information and belief, the tools primarily related to enhancements of the Maven tool, many of which were published on GitHub and Maven Central.

55.     In August 2014, Sonatype released its first preview version of Nexus Repository 3.0, its upgraded Nexus product. Sonatype released further preview versions of Nexus Repository 3.0 throughout 2014, 2015, and part of 2016.

56.     In September 2015, Sonatype released an iteration of Nexus Repository 3.0 that included support for Docker through the addition of Sonatype's proprietary Docker plugin feature. Although Docker support was free in this iteration, the Docker functionality was released closed-source only. On information and belief, Mr. Dreghiciu was one of only two Sonatype developers that worked on creating the source code that underlies the Docker support for Nexus 3.0.

57.     On information and belief, at the end of 2015, Defendants began working for Wal-Mart Technology ("Wal-Mart"), a project of the American multinational retail corporation

known as Wal-Mart Stores, Inc. Wal-Mart Stores, Inc. operates retail businesses throughout the state of Maryland. On information and belief, Defendant van Zyl told various Sonatype employees that Defendants' work for Wal-Mart involved enhancing Nexus 2.0 for Wal-Mart applications.

58.     On information and belief, on or about March 11, 2016, Cservanak left Sonatype and began working at Takari and Wal-Mart with Defendant van Zyl. On information and belief, Dreghiciu also joined Defendant van Zyl at Takari and Wal-Mart shortly thereafter.

59.     Upon termination of Cservanak's engagement as an independent contractor for Sonatype, Cservanak's signed a letter dated March 9, 2016, acknowledging his post-termination, continuing obligations under his Independent Contractor Agreement with Sonatype.

60.     Likewise, upon termination of Dreghiciu's engagement as an independent contractor for Sonatype, Dreghiciu signed a letter dated March 9, 2016, acknowledging his post-termination, continuing obligations under his Independent Contractor Agreement with Sonatype.

61.     On information and belief, Dreghiciu and/or Cservanak retained copies of Sonatype's source code following the end of their consulting agreement with Sonatype.

62.     On April 1, 2016, Defendant van Zyl emailed a Sonatype employee stating that he is running Nexus 2.0, "within Walmart doing the deployments for all our applications." Defendant van Zyl further stated that "we're going to need Docker support *which I plan to get Alin [Dreghiciu] to start*." He also stated that Wal-Mart would not use Nexus 3.0, which offered Docker support, because Wal-Mart is not "ever going to pay a license fee."

63.     On information and belief, at Defendant van Zyl's behest, before leaving Sonatype Cservanak and Dreghiciu improperly acquired or retained copies of Sonatype's proprietary and confidential business information, including its know-how and source code with

knowledge that this confidential information would be used to design, or would be incorporated into, a Takari plugin that would directly compete with Sonatype's products.

64.     Accordingly, both Cservanak and Dreghiciu owed separate duties of confidentiality to Sonatype by virtue of their respective Independent Contractor Agreements. Both Cservanak's and Dreghiciu's duties of confidentiality to Sonatype continued after termination of their engagements as contractors. On information and belief, Defendants knew or should have known that Cservanak and Dreghiciu both owed separate duties of confidentiality to Sonatype, and further induced Cservanak and Dreghiciu to breach those duties. On information and belief, Cservanak and/or Dreghiciu knowingly and willfully violated their respective confidentiality duties to Sonatype by acquiring, using, and/or disclosing Sonatype's confidential business information without Sonatype's authorization.

65.     ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

66.     ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

67.     ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████
████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

68.     On information and belief, since April 2016, Takari has released at least twelve

other plugins for Nexus Repository 2.0.

**E.  Takari's Misappropriation of Sonatype's Proprietary Software Source Code**

69.     ████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████████████

70.     ██████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████

71.     ███████████████████████████████████████

█████████████████████████████████████

72.     ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████

73.     ████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

74.   ██████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████

75.     On information and belief, Wal-Mart's use of the Takari Docker plugin is causing commercial harm to Sonatype.

## COUNT I

## TRADE SECRET MISAPPROPRIATION
## UNDER FEDERAL DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836, *et seq.*)

76.     Sonatype realleges and incorporates herein the allegations contained in paragraphs 1 through 75 of this Complaint.

77.     Sonatype brings this claim for relief under the Defend Trade Secrets Act, 18 U.S.C § 1836, *et seq*.

78.     The confidential know-how and source code associated with Sonatype's Nexus software, including with its Docker plugin, are confidential information that constitute "trade secrets."

79.     Specifically, (1) they comprise business and technical information, including methods, techniques, processes, procedures, programs, or codes; (2) Sonatype has taken reasonable measures to keep such information secret by, among other things, disclosing it only to those individuals who need the information to perform their duties, making known to these individuals the fact that the information is to be kept confidential, and maintaining reasonable security and confidentiality measures to protect the information, such as by requiring anyone given access to sign confidentiality agreements; and (3) the information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, Sonatype's competitors and others who can obtain economic value from the use of the information.

80.     Sonatype is the owner of the confidential know-how and source code associated with Sonatype's Nexus software, including with its Docker plugin.

81.     Sonatype's confidential know-how and source code associated with its Nexus software, including with its Docker plugin, are related to a product or service used in, or intended for use in, interstate and foreign commerce.

82.     On information and belief, Defendants acquired the confidential know-how and source code associated with Sonatype's Nexus software, including with its Docker plugin, by theft, breach or inducement of a breach of a duty to maintain secrecy.

83.     On information and belief, Defendants directed Cservanak and/or Dreghiciu to wrongfully acquire or retain copies of Sonatype's confidential business information, including its

source code and related know-how with knowledge that this confidential information would be used to design, or would be incorporated into, a Takari plugin that would directly compete with Sonatype's products. Furthermore, Defendants induced Cservanak and Dreghiciu to breach their respective Independent Contractor Agreements with Sonatype by using and disclosing Sonatype's confidential information for a purpose other than in the performance of their Agreements. On information and belief, Defendants knew or had reason to know that the confidential know-how and source code associated with Sonatype's Nexus software, including with its Docker plugin, were wrongfully acquired by theft, breach or inducement of a breach of a duty to maintain secrecy.

84. 

85.

86.     On information and belief, Defendants knew or had reason to know that the confidential know-how and source code associated with Sonatype's Nexus software, including with its Docker plugin, were derived from or though persons who had acquired them through theft, breach or inducement of a breach of a duty to maintain secrecy, acquired them under

circumstances giving rise to a duty to maintain their secrecy or limit their use, or derived from or through persons who owed a duty to Sonatype to maintain their secrecy or limit their use.

87.     On information and belief, Defendants misappropriation of Sonatype's trade secrets has been and continues to be willful and malicious.

88.     On information and belief, Defendants knew that the confidential know-how and source code associated with Sonatype's Nexus software, including with its Docker plugin, rightfully belonged to Sonatype. Nevertheless, on information and belief, Defendants conspired to misappropriate Sonatype's trade secrets for their own material gain.

89.     As a direct and proximate result of Defendants' misappropriation, Sonatype has already suffered, and will continue to suffer, extensive, irreparable injury, loss of goodwill, harm to reputation, irreparable loss of the confidentiality of its confidential, proprietary, and trade secret information, and other injury and damages for which there is no adequate remedy at law. Sonatype will continue to suffer such injury until the misappropriations are preliminarily and permanently enjoined.

90.     As a direct and proximate result of Defendants' misappropriations, Sonatype has already suffered and will continue to suffer additional damages in an amount to be determined at trial and which continue to accrue.

91.     Pursuant to 18 U.S.C. § 1836(B), Sonatype is entitled to damages for actual loss and unjust enrichment caused by the misappropriation of its trade secrets.

92.     Pursuant to 18 U.S.C. § 1836(D), Sonatype is entitled to recovery of its attorneys' fees.

93.     Because Defendants' misappropriation of Sonatype's trade secrets was willful and malicious, Sonatype is entitled to twice the amount of damages awarded for Defendants' misappropriation.

**COUNT II**
**TRADE SECRET MISAPPROPRIATION**
**UNDER MUTSA (Md. Code Ann., Com. Law §§ 11–1201,** *et seq.***)**

94.     Sonatype realleges and incorporates herein the allegations contained in paragraphs 1 through 93 of this Complaint.

95.     Sonatype brings this claim for relief under the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law §§ 11–1201, *et seq*.

96.     Sonatype owns and possesses certain confidential, proprietary, and trade secret information, including the confidential know-how and source code associated with Sonatype's Nexus software, including with its Docker plugin, as alleged above.

97.     Sonatype's confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information, as alleged above.

98.     Sonatype's trade secrets, including the confidential source code and related know-how associated with Sonatype's Nexus software, including with its Docker plugin, are highly valuable to Sonatype and constitute a primary underlying source of Sonatype's revenue. Great amounts of resources and money were devoted to creating and developing Sonatype's trade secrets.

99.     Sonatype has taken reasonable measures under the circumstances to keep such information secret, as alleged above.

100.     Defendants' actions, as described above, constitute misappropriation of Sonatype's confidential, proprietary, and trade secret information, for Defendants' gain, and to the detriment of Sonatype in violation of the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law §§ 11–1201, *et seq*.

101.     On information and belief, Defendants directed Cservanak and/or Dreghiciu to wrongfully acquire or retain copies of Sonatype's confidential business information, including its know-how and source code with knowledge that this confidential information would be used to design, or would be incorporated into, a Takari plugin that would directly compete with Sonatype's products. Furthermore, Defendants induced Cservanak and Dreghiciu to breach their respective Independent Contractor Agreements with Sonatype by using and disclosing Sonatype's confidential information for a purpose other than in the performance of their Agreements. On information and belief, Defendants knew or had reason to know that the confidential know-how and source code associated with Sonatype's Nexus software, including with its Docker plugin, were acquired by theft, breach or inducement of a breach of a duty to maintain secrecy.

102.     ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████ On information and belief, Defendants knew or had reason

to know that the confidential know-how and source code associated with Sonatype's Nexus software, including with its Docker plugin, were derived from or though persons who had acquired them through theft, breach or inducement of a breach of a duty to maintain secrecy, acquired them under circumstances giving rise to a duty to maintain their secrecy or limit their use, or derived from or through persons who owed a duty to Sonatype to maintain their secrecy or limit their use.

103.    On information and belief, Defendants' misappropriation of Sonatype's trade secrets has been and continues to be willful and malicious. On information and belief, Defendants knew that the confidential know-how and source code associated with Sonatype's Nexus software, including with its Docker plugin, rightfully belonged to Sonatype. Nevertheless, on information and belief, Defendants conspired to misappropriate Sonatype's trade secrets for their own material gain.

104.    As a direct and proximate result of Defendants' misappropriation, Sonatype has already suffered, and will continue to suffer, extensive, irreparable injury, loss of goodwill, harm to reputation, irreparable loss of the confidentiality of its confidential, proprietary, and trade secret information, and other injury and damages for which there is no adequate remedy at law. Sonatype will continue to suffer such injury until the misappropriations are preliminarily and permanently enjoined.

105.    As a direct and proximate result of these misappropriations, Sonatype has already suffered and will continue to suffer additional damages in an amount to be determined at trial, in excess of $75,000, and, which continue to accrue.

106.    Sonatype is entitled to recovery of its attorneys' fees.

107.     Because Defendants' misappropriation of Sonatype's trade secrets was willful and malicious, Sonatype is entitled to twice the amount of damages awarded for Defendants' misappropriation.

### COUNT III
### VIOLATION OF 17 U.S.C. § 1202

108.     Sonatype realleges and incorporates herein the allegations in Paragraphs 1 through 107.

109.     On information and belief, Defendants knowingly and without the authority of Sonatype, removed copyright management information in violation of 17 U.S.C. § 1202(b)(1).

110.     On information and belief, Defendants knowingly distributed copies of Sonatype's copyrighted source code files with knowledge that the copyright management information was removed without the authority of Sonatype or the law.

111.     Further, on information and belief, Defendants knew or had reasonable grounds to know that such distribution would induce, enable, facilitate, or conceal an infringement of Sonatype's copyrights by others

112.     On information and belief, Defendants did induce, enable, facilitate, or conceal the infringement of Sonatype's copyrights by others by removing the copyright management information affixed to Sonatype's copyrighted source code files.

113.     Sonatype did not authorize the removal of any of Sonatype's Copyright Management Information.

114.     As a direct and proximate result of each violation of 17 U.S.C. § 1202, Sonatype has suffered injuries and damages.

115.     As a result of Defendants' violations of 17 U.S.C. § 1202, Sonatype is entitled to the remedies set forth under 17 U.S.C. § 1203.

116.    On information and belief, the conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Sonatype irreparable injury that cannot be fully compensated or measured in money.

117.    Sonatype has no adequate remedy at law.

118.    Pursuant to 17 U.S.C. § 1203(b), Sonatype is entitled to injunctive relief, prohibiting Defendants from any further violation of Section 1202 and ordering that Defendants deliver up to Sonatype all copies of the infringing products for destruction.

## PRAYER FOR RELIEF

WHEREFORE, Sonatype respectfully that this Court:

1.    Adjudge Defendants to have violated 18 U.S.C. § 1836, *et seq*., by misappropriating Sonatype's trade secrets;

2.    Adjudge Defendants to have violated Md. Code Ann., Com. Law §§ 11–1201, *et seq*., by misappropriating Sonatype's trade secrets;

3.    Adjudge Defendants to have violated 17 U.S.C. § 1202 by wrongfully removing Sonatype's copyright management information;

4.    Award damages against Defendants as a result of their wrongful acts against Sonatype in an amount to be proved at trial;

5.    Award Sonatype attorneys' fees, its costs, and prejudgment and post-judgment interest;

6.    Issue a Temporary Restraining Order and/or a Preliminary Injunction immediately restraining and enjoining Defendants, and their agents, employees, officers, successors, licensees, and assigns, and all persons acting in concert or participation with each or any of them, from directly or indirectly:

- 26 -

CONFIDENTIAL — ATTORNEYS' & PARTIES' EYES ONLY

    a.  Using, disclosing, copying, distributing, or transmitting for any purpose (including but not limited to solicitation of end-users or customers) any of Sonatype's confidential, proprietary, and trade secret information, including its code associated with its Nexus software, including with its Docker plugin; and

    b.  Requiring Defendants to return all originals, copies, or other reproductions, in any form whatsoever, of any confidential information of Sonatype, and (after preserving all materials in an appropriate manner for purposes of this litigation, including all metadata) to purge or destroy any and all computerized records of any confidential information or copyrighted material of Sonatype that are within Defendants' possession, custody or control;

    7.    Grant a Permanent Injunction restraining and enjoining Defendants from the conduct set forth in subparagraph 6(a) above;

    8.    Grant such other and further relief as this Court deems equitable, just, and proper.

Dated: November 23, 2016

Respectfully submitted,

Daniel E. Yonan (*pro hac vice* to be filed)
Paul A. Ainsworth (Bar No. 19763)
Robert G. Sterne (Bar No. 25096)
STERNE, KESSLER, GOLDSTEIN & FOX
P.L.L.C.
1100 New York Ave., N.W.
Washington, DC 20005
Telephone: (202) 371-2600
Email: dyonan@skgf.com
Email: painsworth@skgf.com
Email: rsterne@skgf.com

*Attorneys for Plaintiff Sonatype, Inc.*